# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LINDA SKAAR,

    Plaintiff,

vs.                                                             No. Civ. 96-1809 WWD/LFG

ALBUQUERQUE PUBLIC SCHOOLS,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION OF DISMISSAL

THIS MATTER comes before the Court upon the Memorandum and Order Recommending Dismissal, filed March 6, 1998 [75-1][1]. Plaintiff ("Skaar") has filed objections to the recommendation, and I have made a **de novo** determination of those portions of the proposed findings and recommended disposition to which objections were made. In her lawsuit, Ms. Skaar ("Skaar") alleges that the defendant ("APS") violated her statutory rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12213 by failing to provide reasonable accommodations so that she can perform the essential functions of her job.

Skaar was ordered to appear for a Court-ordered independent medical examination which defendant has been trying to obtain since the fall of 1997. [34]. Dr. Moseley, the physician designated by APS, was to have conducted a pulmonary function test to rule out obstructive lung disease. The chronology of events describing plaintiff's ongoing resistance to have the test performed is described in detail in Magistrate Judge Garcia's Memorandum and Order Recommending Dismissal [75].

---

[1] The docket number of the Order, etc., will be inserted where appropriate.

The recommendation is based on Skaar's refusal to appear for this test, contrary to counsel's advice and even knowing that her refusal to submit to the test could result in an imposition of sanctions, including dismissal of her lawsuit.  Plaintiff canceled one appointment for the test and refused to show up for another one which was scheduled for March 5, 1998, just a few short weeks away from the trial date.  See, "Order Directing Plaintiff to Appear for Examination" [64]. Skaar believes that the test will cause her physical harm and that it is not necessary for her lawsuit.  In her affidavit, Skaar stated that she was sick for several days following her visit to UNM Hospital to meet with Dr. Moseley after noticing a strong odor that "smelled like hair spray."  Obj., Ex. E.

*Relevancy*

In her objections, plaintiff argues yet again that the test is irrelevant.  Alternatively, plaintiff says that she is "now feeling much better" and is willing to undergo the test.  The issue of the test's relevancy to this lawsuit has already been subjected to extensive and careful consideration by the Court. [25 to 34].  However, plaintiff's latest position on the issue has a twist, which I will address.

Plaintiff contends that defendant " wants to have it both ways" in requesting the pulmonary function test while at the same time arguing in its motion in limine that there are no valid test procedures for MCS.[2]  However, it is plaintiff who shifts positions by arguing irrelevance of a test that admittedly cannot diagnose the very disease from which plaintiff claims to be disabled.  See Tr. of Mar. 5 Proceedings, at 12.  Plaintiff goes so far as to rely on the medical doctor's affidavit used by the defendant in its motion in limine in order to buttress its own position that any testing defendant seeks to have done is irrelevant to an evaluation of MCS ("multiple chemical sensitivity").  Obj., Ex. C.  In

---

[2] Defendant's motion in limine applies the Daubert factors to exclude expert testimony regarding MCS ("Multiple Chemical Sensitivity"). [67].  Plaintiff has not yet filed a response to the motion.

doing so, plaintiff fatally undercuts any would-be argument she would have had in responding to defendant's motion in limine. Moreover, as a legal strategy, plaintiff's attempt to sacrifice expert testimony in order to get another shot at a trial fails.

Plaintiff contends that because the test is "meaningless" in diagnosing MCS, it should not be done. This theory works only if the purpose behind the independent medical examination is mischaracterized as an effort to prove that Ms. Skaar does or does not have MCS, rather than as a way to rule out other diagnoses, such as obstructive lung disease, which can be tested. In other words, other medical conditions must be ruled out *precisely because* there are no valid testing procedures for MCS. See Obj., Ex. A. Clearly, this objective is consistent with defendant's stance in its motion in limine. Also, as this Court has repeatedly found in the past, and as Judge Garcia noted in making his recommendations, Skaar has placed her medical and physical condition in issue. Mar. 4th Order at 3, 7; Tr. at 14.[3]

Plaintiff's objections to the examinations do not present any other reason why the test does not meet the "good cause" requirement under Fed.R.Civ.P. 35(a). See Schlagenhauf v. Holder, 379 U.S. 104, 117-18 (1964). Even if this Court adopted a burden-shifting approach, requiring Skaar to show that the proposed test is prima facie potentially dangerous, the result would be the same. See Pena v. Troup, 163 F.R.D. 352, 353 (D.Colo. 1995). From the start, the Court has exercised an "abundance of caution and concern for the Plaintiff's wishes and considerations that this test may be damaging." Tr. at 14-15. Judge Garcia also noted at the hearing that Senior Judge Mechem, who was initially the presiding judge in the case, directed that additional information be provided in order to fully evaluate

---

[3] As a threshold matter, Skaar must be a "qualified individual with a disability," as defined under the ADA, in order to fall under the protective umbrella of the statute. See 42 U.S.C. §§ 12112(a); 12111(8). This inquiry is separate and distinct from whether she suffers from MCS.

3

whether the test was necessary. Id.

In addition to Dr. Moseley's statement that in his experience, patients do not suffer any serious side effects from the test, plaintiff's own physician stated that the test would "probably not" have serious medical consequences and that it was "unpredictable" whether it would have a negative impact on Skaar's symptoms. Obj., Ex. B at 104, 108 (Elliott Dep). Also, Dr. Elliot questioned the need for the test, in light of plaintiff's primary complaints. Tr. at 58. However, I attach little significance to her skepticism, as her opinion goes to the medical rather than legal relevance of the test.

*Whether Sanction of Dismissal is Appropriate*

Judge Garcia's recommendation for dismissal sets out a careful analysis of the facts discussing each of the factors set out in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992): (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions. Mar. 4th Order, at 6-11. Upon review of these facts and findings, I find that dismissal is an appropriate sanction for Skaar's refusal to comply with the Court's Order.

The only remaining question is whether plaintiff's willingness to now submit to the test changes the appropriateness of the sanction. Plaintiff states that she was "not functioning well [and] thinking clearly" when she faxed the statement to her attorney on March 5th in which she refused to submit to the test. Obj., Ex. E. However, Skaar was already on notice about the serious consequences that would befall her should she still refuse to appear for the examination. Skaar's change of heart comes too late. Even now I sense an equivocation lurking within her statement that she is willing to

4

appear for the examination. She remains adamant in her belief that she should not have to undergo this test as well as in the expectation that it will result in adverse health consequences. See Ex. E ¶ 12.

Plaintiff's past noncompliance is characterized by a willfulness rather than an inability to comply. Tr. at 17; see Archibeque v. Atchison, Topeka & Santa Fe Railway Co., 70 F.3d 1172, 1174 (10th Cir. 1994). I find no reason to believe the situation has changed appreciably except that now Skaar is perhaps first realizing the enormity of the consequences of her refusal. Plaintiff's stubborn recalcitrance in this matter has already taken up an "inordinate amount of time and judicial resources." Tr. at 16. There is no need to risk additional abuse of the system.

**Wherefore,**

**IT IS ORDERED** that the proposed findings and recommended disposition of the United States Magistrate Judge ("Memorandum and Order Recommending Dismissal") filed March 6, 1998, are adopted by the Court;

**IT IS FURTHER ORDERED** that defendant's motion for fees and costs [73-1] is denied;[4]

**FINALLY, IT IS ORDERED** that this cause is dismissed with prejudice in its entirety.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Defendant's motion for fees and costs was not addressed in the March 6th Memorandum and Order. However, at the hearing, Judge Garcia denied the request, finding that granting the motion would be "adding insult to injury" in light of the recommendation of dismissal. Tr. at 22.